Tueley, J.
delivered the opinion of the court.
Robins, Tingley & Co. recovered a judgment against Thomas Crutchfield for the sum of $827 21J and costs of suit, in the Circuit Court of McMinn county, on the 19th day of August, 1842, upon which an execution was issued on the same day, and was placed in the hands of the Sheriff for collection on the 20th day of December, 1842, which execution was stopped by a'writ of supersedeas on the 7th day of March, 1843. At the April term, 1844, of the Circuit Court for said county of Mc-Minn, the case came on for hearing upon motion to quash the execution; when it appeared, that the defendant had procured a receipt in full for the debt from the Clerk of the court where the judgment was rendered, and from whence the execution issued; but that only the sum of three hundred and sixty-seven dollars of the amount was paid in money, and that in current bank notes of the State of Tennessee, and the balance by the satisfaction of several judgments in favor of the defendant against the Clerk. For the amount paid in money the execu *17 tion was quashed by the Circuit Court, and the supersedeas discharged as to the balance.
To reverse this judgment, a writ of error is prosecuted by both parties to this court, and the question presented, is, as to the validity of the receipt; the one side contending, that it is good at least for the amount proven to have been paid in money; the other, that it is good for nothing. The act of 1807, ch.'66, sec. 9, authorizes the payment of money upon judgments rendered, to be made to the Clerk of the court: the payment of nothing but money can be allowed under this statute, and a receipt given by the Clerk, the consideration of which is anything but money, such as debts due by himself, choses in action, or property, is not a satisfaction of the judgment, and no hinderance to its collection. Lytle vs. Etherly, 10 Yerg. But the question comes up, what is money? It is contended for the plaintiff in the execution, that bank notes are not, and that nothing but that which constitutes a legal tender under the constitution of the United States is, viz, gold and silver. Such is not our opinion. Money is a generic term, and covers every thing which by consent is made to represent property, and passes as such currently from hand to hand, whether it be the iron of the Spartans, the cowry of the African, the gold and silver of the world, or the paper of Modern Europe and America: current, convertible bank paper has been invariably held, both in Europe and the United States, to be a good legal tender in payment of debts, unless it be objected to upon the ground, that it is not gold and silver. This could never have been done, had it not been considered as money, as nothing but money can be tendered in payment of a debt. The Sheriff, as well as the Clerk, receives money upon judgments. They both receive it as officers of the court, and for the suitors of the court: it is true they may refuse to receive any thing but gold and silver; but who has ever dreamed that a payment to a Sheriff in current convertible bank paper, was not a satisfaction of the judgment? It would be productive of immense confusion so to hold it, and force a payment in all cases in gold and silver, and this for the protection of the Sheriff and the debtor; for if the payment be not legally made, it is as if there *18 were no payment; the Sheriff having acted out ot the line of his duty, his securities are not responsible for the act; the judgment not having been satisfied, the debtor may be made to pay it again; and if the Sheriff should be irresponsible, he necessarily looses the first payment, and so of payment to the Clerk. Such consequences would be very destructive, and the inconvenience of so holding the law, intolerable. But it may be said, that in cases of contracts to pay so many dollars of Tennessee bank notes, it has been held that debt will not lie, and that the contract is not for money. This class of cases are sui generis, and have been determined upon their own peculiar circumstances. They are contracts made with a view to a depreciation of the paper; they are not contracts for so many dollars of money in general, but for so many of that particular kind of money; and in this respect stand upon somewhat the same footing as contracts to pay so much foreign money, viz, of sovereigns, moidores, rix dollars, or rupees, the value of which is unknown, it depending upon the rate of exchange and usage, the necessary consequence of which is, that the action upon them sounds in damages. And so the contract to pay bank notes has been held to be a contract to pay so many dollars of that particular money, and in as much as it may be worth less than the standard dollar, which it was intended to represent, it is to be scaled, and, therefore, the action sounds in damages, and debt will not lie, and as a legal consequence, it is not a contract for the payment of money m numero. But when the paper money is of standard value, it passes as money, is received as money, and is subject to the same rules regulating payments when made, as if it were gold and silver.
We are, therefore, of opinion, that current convertible bank notes are money; that a payment made in them, whether to the principal c>r his agent, is a good payment, and affirm the judgment of the Circuit Court as rendered in the case under consideration.